**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA LYNN STRICKLAND, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 2741 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| VILLAGE OF RICHTON PARK and | ) | |
| CHIEF ELVIRA P. WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff alleges that she was terminated from her job with the Village of Richton Park ("Village") because of her race, age, and disability in violation of Title VII, 42 U.S.C. §§ 1981 and 1983, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). Defendants have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss certain claims from the first amended complaint. For the reasons set forth below, the Court grants in part and denies in part the motion.

**Facts**

In August 2008, plaintiff, who is Hispanic and has a physical disability, was hired by the Village as a part-time records clerk working in the Police Department. (1st Am. Compl. ¶¶ 10, 12.)

Starting in June 2011, African-American records clerks were given the opportunity to work extra hours, but plaintiff was not. (*Id.* ¶¶ 21, 31.) Plaintiff complained to defendant Williams about the situation, but Williams ignored her complaints. (*Id.* ¶¶ 22-23, 31-32.)

On March 20, 2012, plaintiff learned that a full-time payroll assistant position in the Village Administrative Office, for which plaintiff was qualified, had been "handed to" Australia Williams, an

African-American records clerk. (*Id.* ¶ 29.) When plaintiff asked defendant Williams why the job had not been posted, she said the Village wanted Australia Williams for the position and "did not want" plaintiff. (*Id.* ¶ 30.)

In April 2012, plaintiff was reprimanded for refusing to let an officer's wife into the personnel-only area of the Police Department, though plaintiff says she was acting in accordance with Department policy. (*Id.* ¶ 33; *see id.*, Ex. F, 4/1/12 Email from Pl. to Williams).)

On December 1, 2012, plaintiff was reprimanded for trying to contact the owner of a lost wallet before inventorying it. (*Id.* ¶ 36.) Plaintiff said she her action was in keeping with office protocol, which "many other Record Clerks, many of whom were African American," followed without being disciplined. (*Id.* ¶¶ 37-39.)

On November 5, 2013, when plaintiff was forty-three years old, the Village terminated her employment. (*Id.* ¶ 12.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In Count II, plaintiff alleges that the Village violated the ADEA by giving more favorable treatment to records clerks who were older than she. (*See* 1st Am. Compl. ¶¶ 47- 50 (alleging that: (1) seven of the nine other records clerks were older than plaintiff; (2) "throughout [her] employment, Plaintiff was treated differently than [older] Records Clerks"; and (3) "Plaintiff was required to work

2

the midnight shift solely because she was one of the 'youngest' on staff.").) However, the ADEA only bars employers from discriminating *against* older employees, not in favor of them. *See Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) ("We see the text, structure, purpose, and history of the ADEA, along with its relationship to other federal statutes, as showing that the statute does not mean to stop an employer from favoring an older employee over a younger one."); *Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012) (citing *General Dynamics* and stating that "[t]he [ADEA] statutory scheme . . . prohibits . . . so-called 'reverse age discrimination' claims."). Thus, plaintiff has not stated a viable ADEA claim.

Plaintiff does not contest this point, but argues that she should be given leave to amend the claim because she "mistyped" certain words in paragraphs 49 and 50 of the first amended complaint. Specifically, she says that paragraph 49, which states that she was treated differently than older records clerks, should say that she was treated differently than younger records clerks. (Pl.'s Resp. Mot. Dismiss at 4-5.) Likewise, plaintiff says paragraph 50, which states that she was put on the midnight shift because she was one of the youngest clerks, should say that she was put on midnights because she was one of the oldest clerks. (*Id.*) But this explanation is belied by her allegation that she was the third youngest of the ten clerks, *i.e.*, she was *not* one of the oldest clerks. (*See* 1st Am. Compl. ¶ 48 (alleging that "six [of the ten records clerks] were over fifty (50) years old, another clerk was approximately forty-five (45), and two other clerks were younger than Plaintiff").) Because plaintiff cannot disclaim as "error" the facts she alleged to support her reverse age discrimination claim, which is not actionable under the ADEA, the Court dismisses Count II with prejudice.

Defendants also move to dismiss any retaliation claim plaintiff may have attempted to state by her single, off-hand reference to retaliation. (*See id.* ¶ 62.) To the extent plaintiff meant to state a claim for retaliation under Title VII or the ADA, it fails. Both statutes make filing a charge of

3

discrimination with the EEOC a prerequisite to filing suit. *See* 42 U.S.C. §§ 12117(a), 2000e-5(e)(1). Plaintiff does not allege that she filed an EEOC charge alleging retaliation. Thus, she can pursue a retaliation claim only if it is "like or reasonably related" to the claims she did raise before the EEOC. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (quotation omitted). "[C]laims are not alike or reasonably related unless . . . . at a minimum, [they] describe the *same conduct* and implicate the *same individuals*." *Id.* at 501 (emphasis in original).

Plaintiff's EEOC charge states that she was subject to "different terms and conditions of employment, including, but not limited to promotion opportunities, breaks, scheduling, and disciplinary action" and that she was discriminated against because of her "race," "national origin," "age," and "disability." (1st Am. Compl., Ex. C, 11/26/13 EEOC Charge.) The premise of a retaliation claim is that plaintiff was punished for engaging in protected activity, an allegation she does not make in her EEOC charge, not that she was subjected to disparate treatment. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). Thus, her retaliation claims are not like or reasonably related to her discrimination claims and cannot be pursued in this suit. *See id.* ("[W]e believe that [plaintiff's] failure to mention any type of protected activity and his failure to identify retaliation as a basis for his charge preclude him from relying on the original charge of discrimination as a basis for his retaliation claim."); *Campbell v. Adventist Health Syst.*, No. 10 C 2586, 2010 WL 3975597, at *3 (N.D. Ill. Oct. 8, 2010) ("As a matter of law, retaliation and discrimination are unrelated and a charge of one generally cannot support a civil suit for the other.") (quotation omitted).

Plaintiff was no more successful if she attempted to allege a retaliation claim under § 1981. *See Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) (stating that "§ 1981 authorizes claims for retaliation, if one person takes action against another for asserting the right to substantive contractual

equality provided by [the statute]") (citing *Humphries v. CBOCS W., Inc.,* 553 U.S. 442, 445 (2008)). To state a claim against the Village, plaintiff must allege that it has a policy of retaliating against employees who complain of discrimination, *see Looper Maintenance Service Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999), an allegation plaintiff does not make. To state a claim against Chief Williams, plaintiff must allege that plaintiff engaged in statutorily protected activity, she suffered an adverse employment action, and there is a causal connection between the two. *Id.* The adverse actions plaintiff allegedly suffered for complaining to Chief Williams about discrimination were the April and December 2012 reprimands. (1st Am. Compl. ¶¶ 61-62); *see Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011) (assuming that protected activity is the same for Title VII and § 1981 retaliation claims); *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) ("[A]n informal complaint may constitute protected activity for purposes of [Title VII] retaliation claims."). However, a reprimand is an adverse employment action only if it "materially alter[s] the terms or conditions of employment." *Sklyarsky v. ABM Janitorial Servs.-N. Cent., Inc.*, 494 F. App'x 619, 622 (7th Cir. 2012); *see Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009) ("[R]eprimands without any changes in the terms or conditions of . . . employment are not adverse employment actions."); *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) ("A materially adverse change [in the terms or conditions of employment] might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."). Plaintiff does not allege that the reprimands materially altered the conditions of her employment. Thus, she has not stated a § 1981 retaliation claim.

In Count V, plaintiff asserts a § 1983 claim against the Village for its alleged "discriminatory policy to eliminate employees near entitlement of pensions." (1st Am. Compl. ¶ 92.) Even if "entitlement of pensions" is a proxy for age, plaintiff's affirmative allegation that she was one of the youngest record clerks (*id.* ¶ 48), scotches any § 1983 age discrimination claim.

Though she does not explicitly plead them, plaintiff contends that her complaint also supports § 1983 race discrimination claims against both the Village and Chief Williams. To hold the Village liable under § 1983, plaintiff must allege that the deprivation of her constitutional rights occurred pursuant to one of its policies or practices. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A policy, in this context, is an express policy, a practice so widespread and permanent that it has the force of law, or action by a person with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

Plaintiff argues that there is a widespread practice of discrimination against non-African-American records clerks. In support of this theory, she alleges that: (1) in June 2011 and March 2012, extra work hours were offered to African-American clerks but not to her; (2) in March 2012, a payroll assistant position for which she was qualified was "handed to" an African-American clerk instead of being "posted for all to apply"; (3) in April 2012, plaintiff was reprimanded for following a Department policy about access to restricted areas; and (4) in December 2012, plaintiff was reprimanded for failing to inventory lost property, conduct that another clerk, whose race is not specified, committed without reprisal (1st Am. Compl. ¶¶ 21-25, 28-31, 33, 36-39). At best, these allegations suggest sporadic, discrete incidents of discrimination, not a pervasive practice of treating African Americans more favorably than others.

Alternatively, plaintiff argues that the allegedly discriminatory acts were perpetrated by a person with policymaking authority, Chief Williams. State law determines who is a policymaker for

§ 1983 purposes. *See Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009). "[The] inquiry is not whether an official is a policymaker on all matters for the municipality, but whether he is a policymaker in a particular area, or on a particular issue." *Id.* at 676 (quotation omitted). Thus, Chief Williams is a policymaker in this case only if she has the authority to set personnel policies for the Police Department. She does not. *See* Richton Park, Ill. Code, tit. 6, ch. 230 §§ 230.04 ("The Village Manager shall be the administrative head of the Village government, and he or she shall be responsible for the efficient administration of all departments of the Village."); *id.* § 230.05(m) (stating that the Village Manager is empowered to "[p]rescribe rules and regulations for the conduct of the various departments of the Village and divisions thereof"); *id*. § 250.03 ("All police officers shall be subject to rules and regulations as shall be prescribed from time to time by the Chief of Police. . . . [and] approved by the Village Manager . . . ."). Because Williams' alleged actions do not constitute Village "policy" within the meaning of § 1983, the Village's motion to dismiss the § 1983 claim is granted.[1]

To hold Chief Williams individually liable under § 1983, plaintiff must allege that Williams was personally involved in the alleged constitutional deprivation. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, (7th Cir. 2002) (a supervisory official can be held liable only if she "essentially direct[ed] or consent[ed] to the challenged conduct"). Plaintiff does not allege that Williams gave the payroll job to Australia Williams or failed to discipline another clerk–of any race–whom she knew engaged in the conduct for which she reprimanded plaintiff. Thus, those allegations do not support a § 1983 claim. Plaintiff does, however, allege that Williams knew about and refused to remedy the

---

[1]Because defendant seeks punitive damages solely from Chief Williams, individually (*see* Pl.'s Resp. Mot. Dismiss at 9-10), the Village's request to dismiss the punitive damages claim against it is moot.

unequal assignment of extra hours (1st Am. Compl. ¶¶ 22-23, 25, 31-32), which is sufficient to state a § 1983 claim against Williams.

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss [60] and: (1) dismisses with prejudice the Count II ADEA claim and any § 1983 age discrimination claim plaintiff may have attempted to assert; (2) dismisses without prejudice for failure to exhaust administrative remedies any Title VII or ADA retaliation claims plaintiff may have attempted to assert; and (3) dismisses without prejudice to amendment any § 1981 retaliation claims against the Village and Chief Williams and any § 1983 race discrimination claim against the Village that plaintiff may have attempted to assert. The § 1983 race discrimination claim against Chief Williams based on the unequal assignment of extra hours stands. Plaintiff has until September 9, 2015, her final opportunity, to amend the §§ 1981 and 1983 race discrimination claims in accordance with this Order. If she fails to do so by that date, the Court will dismiss those claims with prejudice.

**SO ORDERED.**  **ENTERED:  August 26, 2015**

_____
**JORGE L. ALONSO
United States District Judge**